UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CIVIL ACTION NO. 11-419-DLB-HBG

CARLTON E. SMITH                                                                    PLAINTIFF

vs.                   **MEMORANDUM OPINION AND ORDER**

CITY OF KNOXVILLE, ET AL.                                  DEFENDANTS

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Plaintiff Carlton Smith commenced this 42 U.S.C. § 1983 action against Defendants Joel Ascencio and Brian Mullane for violating his Fourth Amendment right to be free from unreasonable seizure. Plaintiff also advances several other claims based on both federal and state law. The Court has federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. # 38), which has been fully briefed (Docs. # 39, 43, and 45) and is thus ripe for review. For the reasons set forth below, Defendants' motion is hereby **granted in part** and **denied in part.**

I.     **FACTUAL BACKGROUND**

This case concerns the detainment and subsequent arrest of Plaintiff Carlton Smith by Knoxville police officers during the early morning hours of August 27, 2010 for disorderly conduct and possession of drug paraphernalia. The following facts pertaining to his detainment and arrest are taken from a declaration provided by Plaintiff (Doc. # 42), as well

1

as the affidavits of Officers Joel Ascencio and Brian Mullane (Doc. # 38-1); (Doc. # 38-2).[1]

At approximately 2:22 a.m., Plaintiff assisted a visibly intoxicated individual, who had stumbled off the sidewalk on Cumberland Avenue and into the path of oncoming traffic. (Doc. # 42, at 2). Plaintiff had a backpack over his shoulder at the time of this incident. (*Id.*).

Also at this time, Officer Ascencio observed a black male assisting a seemingly intoxicated white male who was staggering and could not walk on his own, which compelled him to pull into the parking lot of a nearby gas station to investigate further. (Doc. # 38-1, at 1). Upon approaching the individuals, the officer recognized the black male as Plaintiff, whom he had encountered during prior drug investigations. (*Id.* at 1-2). According to Officer Ascencio, Plaintiff had a reputation amongst Knoxville police officers as a "tour guide" for his proclivity to stand on street corners and help others obtain narcotics. (*Id.*).

The white male identified himself as Dustin Risdon of Alberta, Canada, explaining that he was in the area to participate in a professional golf tournament. (Doc. # 38-1, at 2). Risdon also indicated that he had consumed ten beers, and Officer Ascencio noted that there was a backpack in the parking lot in the immediate vicinity of the individuals. (*Id.*). The officer eventually arrested Risdon for public intoxication, and advised Plaintiff that he was free to leave. (Doc. # 38-1, at 2); (Doc. # 42, at 3).

In accord with his excusal, Plaintiff picked up his backpack and began to walk away. (Doc. # 38-1, at 2); (Doc. # 42, at 3). Officer Ascencio, though, believed he had observed

---

[1] The officers also submitted a compact disc of video footage to show that Plaintiff consented to a dog sniff of his backpack. (CD of August 27, 2010 at 02:22:36). However, because this argument is not addressed herein, the Court need not consider the video footage.

*Risdon* carrying the backpack when he encountered the two individuals, and thus ordered Plaintiff to return the item. (Doc. # 38-1, at 2); (Doc. # 42, at 3).

A dispute as to the ownership of the backpack then ensued. Plaintiff indicated that the backpack belonged to him and that he was in possession of it when the officer arrived on the scene, which Risdon confirmed. (Doc. # 38-1, at 2); (Doc. # 42, at 3). Officer Ascencio asked if he could open the backpack to corroborate ownership, but Plaintiff refused. (Doc. # 38-1, at 2); (Doc. # 42, at 4). Instead, Plaintiff offered to open the backpack and retrieve his medication to establish his ownership, but the officer did not allow him to do so. (Doc. # 38-1, at 2); (Doc. # 42, at 4). Consequently, Officer Ascencio decided to detain the backpack until a K-9 unit could arrive and conduct an exterior sniff. (Doc. # 38-1).

Officer Ascencio then contacted Officer Mullane, who arrived with his dog, Rocco, at the gas station approximately eight minutes later. (Doc. # 38-1, at 3); (Doc. # 38-2, at 1-2); (Doc. # 42, at 4). Rocco has been trained by Officer Mullane to sit when he detects the odor of narcotics and other illegal substances, which the officer routinely rewards by tossing a rubber ball in the vicinity of where an alert has been made. (Doc. # 38-2, at 2).

At approximately 2:42 a.m., Officer Mullane led Rocco past the backpack. (Doc. # 38-2, at 2); (Doc. # 42, at 4). According to the officer, the dog alerted to the odor of narcotics at the outer pocket of the backpack by sitting down, and he rewarded Rocco by tossing a ball towards the backpack. (Doc. # 38-2, at 2). Plaintiff disagrees, asserting that Officer Mullane led the dog past the backpack multiple times without a response, prompting the officer to reach down toward the backpack and signal Rocco to hit the item. (Doc. # 42, at 4). A moment later, the officer threw the ball onto the backpack and stated that the dog

3

had made a positive hit. (*Id.* at 4-5).

Whatever the case may be, Plaintiff became angry and uncooperative, shouting that the backpack did not contain narcotics. (Doc. # 38-1, at 3). After he ignored the officer's multiple requests that he remain quiet, Officer Mullane arrested him for disorderly conduct. (*Id.*). Although no contraband was ultimately found in the backpack, a search incident to arrest uncovered a crack pipe in Plaintiff's front right pocket. (Doc. # 38-1, at 3); (Doc. # 42, at 5).

Based on his arrest for disorderly conduct and the discovery of the crack pipe on his person, Plaintiff was held for over two months at the Knox County Detention Center. (Doc. # 42, at 5). He was eventually released on November 1, 2010, as Judge Charles Cerny of the General Sessions Court for Knox County not only dismissed his charges for disorderly conduct and possession of drug paraphernalia, but also dismissed a warrant for violation of probation that had been filed against him. (*Id.*).

In light of the foregoing, Plaintiff commenced this Section 1983 action for unreasonable seizure against Officers Ascencio and Mullane, as well as the City of Knoxville, Tennessee, Sterling P. Owen IV, David B. Rausch and Don Jones. The suit was initially assigned to District Judge Thomas W. Phillips, who dismissed the latter three individual as defendants almost one year later. (Doc. # 33). Shortly after the dismissal of Owen, Rausch, and Jones, Officers Ascencio and Mullane moved for summary judgment based upon qualified immunity (Docs. # 38), and the case was then reassigned to the undersigned. (Doc. # 49). That motion is now before the Court.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, in deciding a motion for summary judgment, courts must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As is clear from the face of Rule 56, the "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citation omitted). Once the movant has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, the nonmoving party must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

### III. QUALIFIED IMMUNITY

Qualified immunity is an affirmative defense that shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether qualified immunity is warranted, the Sixth Circuit instructs district courts to apply a two-part test. *Sigley v. City of Parma Heights*, 437 F.3d 527, 536-537 (6th Cir. 2006).

First, the court must determine whether the plaintiff has established a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223 (2009). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* The analysis of Plaintiffs' Section 1983 claims for unreasonable seizure will focus upon the first step.

## IV. SECTION 1983 CLAIMS FOR UNREASONABLE SEIZURE

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. In order to prevail on such a claim, a plaintiff must establish (1) that there was the deprivation of a constitutional right and (2) that the deprivation was caused by a person acting under color of state law. *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007) (citation omitted); *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

Against this legal framework, Plaintiff makes the following allegations in his Complaint:

> When Ascencio drew near, he recognized Mr. Smith as a local homeless individual, and without reasonable suspicion or probable cause to believe that Mr. Smith had done anything illegal, commanded Mr. Smith to approach.
>
> Officer Ascencio told Mr. Smith to "hold on," and by show of force and police authority again unlawfully detained Mr. Smith, absent reasonable suspicion or probable cause.
>
> Officer Ascencio illegally seized both Mr. Smith and the backpack in violation of Mr. Smith's Fourth Amendment right under the United States Constitution to be free from unreasonable seizure . . . .
>
> [The] prolonged detention of Mr. Smith was unjustified and unreasonable. Officer Ascencio did not have an objectively reasonable suspicion that the backpack contained evidence of crime or wrongdoing, and had no right to

6

> detain Mr. Smith upon Mr. Smith's indication that he desired to leave.
>
> [I]f the canine did make a positive hit on Mr. Smith's backpack, it occurred during the unreasonable and illegal seizure of Mr. Smith and his backpack.
>
> Officer Ascencio arrested Mr. Smith without probable cause to believe that Mr. Smith had committed a criminal offense. Furthermore, this arrest occurred while Mr. Smith was unreasonably and illegally seized.

(Doc. # 1, at 4-6, 8). Construing these claims broadly, and based on these allegations, as well as the narrative set forth above, the Court concludes that Plaintiff is complaining about his initial detainment with Dustin Risdon, his subsequent detainment and the detainment of his backpack after he attempted to leave with the item, and finally his arrest thereafter for disorderly conduct. Each complaint will be addressed in turn.

### A.    Initial Detainment of Plaintiff

The Fourth Amendment requires that all "searches and seizures" be based upon probable cause. There are, however, certain "narrowly drawn exceptions" to the probable cause requirement, including the investigatory detention, or *Terry* stop. *United States v. Garza,* 10 F.3d 1241, 1245 (6th Cir. 1993) (citation omitted).

A lawful *Terry* stop requires that the authorities be able to point to "specific and articulable facts" justifying their reasonable suspicion that the suspect has been or is about to be involved in criminal activity. *Id.* (citations omitted). In evaluating whether an officer had reasonable suspicion, courts consider the "totality of the circumstances" rather than analyze each fact in isolation. *United States v. Williams*, 615 F.3d 657, 666 (6th Cir. 2010) (citation omitted).

Here, Officer Ascencio approached Plaintiff and Risdon after observing Plaintiff assisting a seemingly intoxicated Risdon, who was staggering and could not walk on his

7

own. This initial encounter was not a seizure. However, at some point after deciding to arrest Risdon for public intoxication, the consensual encounter ripened into a detention. By that point however, the officers had "specific and articulable facts" justifying the officer's reasonable suspicion that Risdon was in violation of Tennessee's public intoxication statute, which reads:

> A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that:
>
> (1) The offender may be endangered;
>
> (2) There is endangerment to other persons or property; or
>
> (3) The offender unreasonably annoys people in the vicinity.

Tenn. Code. Ann. § 39-17-310; *see also Gupta v. Crane*, No. 1:09-CV-573, 2010 WL 775222, at *3 (W.D. Mich. Feb. 26, 2010) (concluding that police officers had a reasonable suspicion of public intoxication based on a 911 call and their observation that the plaintiff was stumbling and having difficulty standing). More importantly, Plaintiff's proximity to and interaction with Risdon, along with his reputation as a "tour guide," also supports the officer's reasonable suspicion that Plaintiff was at least about to, if not had already violated the statute. *Cf. United States v. Collins*, 445 F. App'x 840, 841 (6th Cir. 2011) (concluding that police officers had an objective and particularized basis for suspecting criminal activity because, among other things, they were aware that the suspect had been involved in drug-related activity in the past). This is especially true in light of the fact that this incident occurred at approximately 2:22 a.m. *See United States v. Horne*, 313 F. App'x 788, 791 (6th Cir. 2008) (concluding that police officers had an objective and particularized basis for suspecting criminal activity because, among other things, the encounter with the suspect

8

occurred shortly after 1:00 a.m.).

Because he had "specific and articulable facts" that criminal activity was afoot, Officer Ascencio is entitled to qualified immunity as to the following claim:

> When Ascencio drew near, he recognized Mr. Smith as a local homeless individual, and without reasonable suspicion or probable cause to believe that Mr. Smith had done anything illegal, commanded Mr. Smith to approach.

Accordingly, there was no constitutional violation based on Ascencio's conduct up to that point.

### B.     Subsequent Detainment of Plaintiff and Backpack

While Plaintiff's initial detainment presents a fairly straightforward inquiry, his subsequent detainment and the detainment of his backpack after he attempted to leave with the item is a more difficult question. This is because Defendants have set forth a litany of arguments, beginning with their contention that the detainment of the backpack does not constitute a seizure as contemplated by the Fourth Amendment.

Defendants' contention is without merit, as it is based upon a misplaced reliance on the Court of Appeals for the Sixth Circuit's decision in *United States v. Gant*, 112 F.3d 239 (6th Cir. 1997). In that case, the appellate court explained that removing luggage from the overhead compartment in a Greyhound bus for examination by a drug-sniffing dog did not constitute a seizure because there was no meaningful interference with the defendant's possessory interest. *Id.* at 241-242. More specifically:

> The bag was moved only a short distance (from an open overhead compartment to the seat below), for a short time (just long enough for the dog to walk up and down the aisle), and the movement occurred at a time when defendant had left the bag unattended, so his access to it was never impaired. Finally, had the dog not indicated that the bag contained drugs, defendant would have been able to travel uninterrupted to the next stop with his bag.

9

*Id.* at 242.

The Sixth Circuit, though, has also held drug enforcement officials meaningfully interfered with two air traveler's possessory interest and thus committed a seizure when the agents told them their money would be tested with a narcotics detection dog. *United States v. Fifty-Three Thousand Eighty-Two Dollars in U.S. Currency ("$53,082")*, 985 F.2d 245, 248 (6th Cir. 1993). Moreover, in *United States v. Carrazco-Escalante*, 300 F. Supp. 2d 1155, 1164 (D.N.M. 2004), the District Court of New Mexico concluded that a seizure occurred when a border patrol agent took the defendant's jacket from his custody in order to expose it in a clothing lineup to a narcotics detection dog.

The detainment of Plaintiff's backpack here is more akin to the circumstances underlying the latter two cases, as he had taken possession of the item (by picking it up) before he began to walk away. Unlike *Gant*, then, his access was impaired, as the bag was not unattended at the time it was detained.

Having determined that his backpack was seized at the moment Ascencio took possession of it, the next question is whether Plaintiff's detainment or the detainment of his backpack was unreasonable. Defendants primarily argue that the detentions were supported by reasonable suspicion. The Supreme Court's holding in *United States v. Place*, 462 U.S. 696 (1983) is the proper starting point for analysis.

As discussed, it is well-settled that law enforcement officials can conduct *Terry* stops to briefly detain individuals for investigatory purposes. In *Place*, the Supreme Court held that law enforcement interests can also support a seizure of property based on less than probable cause "[w]hen the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests." *Id.* at 703. Accordingly, "when an officer's

observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny . . . permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." *Id.* at 706.

Although *Place* appears to open the door to the Court considering Defendants' argument that the detainment of Plaintiff's backpack was supported by reasonable suspicion, subsequent decisions of lower courts expound on the narrowness of the Supreme Court's holding. For instance, the Sixth Circuit considered *Place*, yet held that probable cause is required to justify the seizure of cash carried on one's person because the privacy interests in such items exceed that of luggage. *$53,082*, 985 F.2d at 249. As the appellate court explained:

> Obviously, the privacy interests in luggage are of a different order than the privacy interests in personal effects carried on the person. First, luggage is routinely x-rayed as part of airport security. Second, with respect to the luggage itself, as opposed to its contents, the person's possession of the luggage is open and public. One need only observe a person to determine whether he is in custody of luggage. Personal effects, however, are concealed on the possessor's person.

*Id.* (citation omitted). Simply put, "*Place* does not give blanket authority to base all seizures on no more than reasonable articulable suspicions; rather, *Place* allows courts to evaluate individual circumstances and decide whether reasonable articulable suspicions are all that is required to justify the seizure at issue." *Id.*

The decision of the District Court of New Mexico in *Carrazco-Escalante* is further instructive. In that case, the court concluded that reasonable suspicion was insufficient to justify seizure of the defendant's jacket, as the seizure involved removing the jacket from his person and thus invading his bodily integrity. 300 F. Supp. 2d at 1164. The seizure,

11

then, was "similar in nature and extent to the seizure of cash which the claimants carried on their person in *$53,082*." *Id.*

The issue before the Court–whether the seizure of the backpack can be justified based upon reasonable suspicion–comes down to the following question: Is the seizure analogous to the seizure of personal luggage in *Place*, or to the seizures made in *$53,082* and *Carrazco-Escalante*? While the latter decisions illustrate the narrowness of the Supreme Court's decision, the circumstances of this case fall within the ambient of *Place*.

At the outset, the Court notes that a person's possession of both a backpack and luggage is open to the public. Furthermore, the backpack is not a personal effect (at least as contemplated by the Sixth Circuit in *$53,082*), and seizure of it did not involve invading Plaintiff's bodily integrity. Most importantly, if law enforcement has a significant interest in seizing luggage in airports due to the enforcement problems associated with the detection of narcotics trafficking, then it is fair to conclude that patrol officers have a significant interest in seizing backpacks from "tour guides" who assist others in obtaining narcotics on street corners. *Place*, 462 U.S. at 698. As the Supreme Court explained:

> We examine first the governmental interest offered as a justification for a brief seizure of luggage from the suspect's custody for the purpose of pursuing a limited course of investigation. The Government contends that, where the authorities possess specific and articulable facts warranting a reasonable belief that a traveler's luggage contains narcotics, the governmental interest in seizing the luggage briefly to pursue further investigation is substantial. We agree. As observed in *United States v. Mendenhall*, "[t]he public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit." 446 U.S. 544, 561, 100 S.Ct. 1870, 1880, 64 L.Ed.2d 497 (1980) (opinion of POWELL, J.).

*Id.* at 703. For these reasons, the Court will consider Defendants' argument that the detainment of the backpack was supported by reasonable suspicion.

Stated succinctly, Defendants contend that Officer Ascencio had "specific and articulable facts" that the backpack contained narcotics. The pertinent Tennessee statute provides that "[i]t is an offense for a person to knowingly possess . . . a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tenn. Code. Ann. § 39-17-418(a).

The Court agrees that the officer had "specific and articulable facts" of drug possession. Again, Plaintiff, a known drug "tour guide," was initially detained with a visibly intoxicated individual at 2:22 a.m. Those facts cannot and should not be ignored simply because he was released after Risdon was arrested. If the Court must avoid considering the facts in isolation, then it follows that it must refuse to feign ignorance as to these facts. Simply put, the phrase "totality of the circumstances" means the *totality of the circumstances*.

In sum, the Court agrees with Plaintiff that the detainment of his backpack constitutes a seizure as contemplated by the Fourth Amendment. That said, at least in this case, the seizure of the backpack can be justified based upon reasonable suspicion, which Officer Ascencio had in light of the "totality of the circumstances." Two issues, though, remain.

First, Plaintiff not only contests grounds for the seizure, but also the duration of it. However, the dog sniff commenced roughly ten minutes after the backpack was seized and twenty minutes after Plaintiff was initially detained, which is not unreasonable. *See United States v. Garcia*, 496 F.3d 495, 504 (6th Cir. 2007) (concluding that the duration of an investigatory stop of a vehicle was reasonable when a dog sniff was performed within a half

13

hour of the stop).

Second, as touched on at outset of this subsection, Plaintiff claims that he was unreasonably seized along with the backpack. As with the detainment of the item, the Court is inclined to agree that he was seized as contemplated by the Fourth Amendment. *See Place*, 462 U.S. at 708 ("Particularly in the case of detention of luggage within the traveler's immediate possession, the police conduct intrudes on both the suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary. . . . [S]uch a seizure can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return.") (footnote omitted). However, the same facts supporting Officer Ascencio's reasonable suspicion as to the backpack also support the brief seizure of Plaintiff.

Because the seizure of Plaintiff and his backpack were supported by reasonable articulable suspicion, Officer Ascencio is entitled to qualified immunity as to the following claims:

> Officer Ascencio told Mr. Smith to "hold on," and by show of force and police authority again unlawfully detained Mr. Smith, absent reasonable suspicion or probable cause.
>
> Officer Ascencio illegally seized both Mr. Smith and the backpack in violation of Mr. Smith's Fourth Amendment right under the United States Constitution to be free from unreasonable seizure . . . .
>
> [The] prolonged detention of Mr. Smith was unjustified and unreasonable. Officer Ascencio did not have an objectively reasonable suspicion that the backpack contained evidence of crime or wrongdoing, and had no right to detain Mr. Smith upon Mr. Smith's indication that he desired to leave.
>
> [I]f the canine did make a positive hit on Mr. Smith's backpack, it occurred during the unreasonable and illegal seizure of Mr. Smith and his backpack.
>
> [The] arrest occurred while Mr. Smith was unreasonably and illegally seized.

14

## C. Arrest of Plaintiff

As noted, the Fourth Amendment requires that all seizures be based upon probable cause, which includes arrests. *See Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) ("[I]t is well established that any arrest without probable cause violates the Fourth Amendment."). The Supreme Court has explained the standard as follows:

> [T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.
>
> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that the substance of all the definitions of probable cause is a reasonable ground for belief of guilt.

*Maryland v. Pringle*, 540 U.S. 366, 370-371 (2003) (citations and internal quotations omitted).

Plaintiff was arrested for violating Tennessee's disorderly conduct statute, which prohibits persons from "mak[ing] unreasonable noise that prevents others from carrying on lawful activities." Tenn. Code. Ann. § 39-17-305(b). Here, Plaintiff had been shouting that his backpack did not contain narcotics and ignored multiple requests that he remain quiet immediately after the dog sniff concluded. According to Officer Ascencio, his behavior interfered with the investigation. (Doc. # 38-1, at 3). This satisfies the probable cause standard. *See State v. Padgett*, No. E2011-01279-CCA-R3CD, 2012 WL 1648390, at *11 (Tenn. Crim. App. May 9, 2012) (validating an arrest pursuant to the Tennessee statute because the defendant interrupted a police officer's investigation of an automobile accident by yelling and screaming that "[i]t was my driveway; it was my driveway . . . . [Y]ou do the

15

math" and also proclaiming that "I was in my own damn driveway"); *Howard v. Smith Cnty., Tenn.*, No. 2:10-0009, 2011 WL 4361486, at *7 (M.D. Tenn. Sept. 19, 2011) ("[A] reasonable officer could believe [the plaintiff was engaged in disorderly conduct] because she made 'unreasonable noise,' by angrily yelling and cursing at [the police officer] while standing directly behind him, and, in doing [so], prevented him from continuing on with the sobriety test of [her brother].").

Because he had "probable cause" for an arrest for disorderly conduct, Officer Ascencio is entitled to qualified immunity as to the following claim:

> Officer Ascencio arrested Mr. Smith without probable cause to believe that Mr. Smith had committed a criminal offense. Furthermore, this arrest occurred while Mr. Smith was unreasonably and illegally seized.

## V. OTHER CLAIMS AGAINST THE OFFICERS

Besides his claims for unreasonable seizure, Plaintiff also advances several other claims against the officers based on both federal and state law.

### A. Federal Law Claims

Plaintiff also relies upon Section 1983 in asserting deprivation of his Fourteenth Amendment rights to due process and equal protection. Furthermore, he has set forth a cause of action for conspiracy to interfere with his civil rights pursuant to Section 1985. Each claim will be addressed in turn.

#### 1. Due Process Violation

Unreasonable seizure claims are properly analyzed under the Fourth Amendment–not the Fourteenth Amendment. *Simmons v. Grandison*, 833 F.Supp.2d 702, 708 (E.D. Mich. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Plaintiffs' claim that Defendants violated the Fourteenth Amendment by depriving him of liberty and

16

Case 3:11-cv-00419-DLB-HBG   Document 52   Filed 08/20/13   Page 16 of 20   PageID #: 262

property without due process must therefore be dismissed.

### 2. *Equal Protection Violation*

Plaintiff also relies upon the Fourteenth Amendment in asserting that Defendants violated his right to equal protection of the law by selectively enforcing Tennessee law. To demonstrate an equal protection claim based upon selective enforcement, a plaintiff must establish "that someone similarly situated but for the illegitimate classification used by the government actor was treated differently." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). Plaintiff must show that either Officer Ascencio or Officer Mullane distinguished between him and similarly situated individuals based on some bad reason, proving intent, or that there was no rational reason to distinguish between him and similarly situated persons. *Id.*

This claim will also be dismissed. Plaintiff has failed to set forth any allegations, much less provide any evidence, to support this cause of action. *See Hutson v. Felder*, No. CIV.A. 5:07-183-JMH, 2008 WL 4186893, at *6-7 (E.D. Ky. Sept. 10, 2008) (dismissing a claim for selective prosecution because the arrestee failed to allege all of the facts necessary to support the required elements of the cause of action)

### 3. *Conspiracy to Violate Civil Rights*

Finally, Plaintiff brings a Section 1985 claim that Defendants conspired against him to deprive him of his constitutional right to equal protection of the law. In order to demonstrate such an action, a plaintiff must establish that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or

17

privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971)).

As with his selective enforcement claim, Plaintiff has failed to set forth the necessary allegations, much less provide any evidence, to support his Section 1985 claim. More particularly, there is no allegation or evidence of racial or other class-based animus. As a result, this cause of action merits no further consideration.

**B.    State Law Claims**

Defendants argue that the dismissal of Plaintiff's federal claims against them renders this Court's jurisdiction over the remaining state law claims solely supplemental under 28 U.S.C. § 1367, and that the undisputed facts in the record do not support any of Plaintiff's state law claims, which include two claims premised upon the Tennessee Constitution, false imprisonment, official oppression, and malicious prosecution, because their interactions with Plaintiff on the night in question were supported by either probable cause or reasonable suspicion. Neither assertion is persuasive.

With respect to the Court's jurisdiction, no dispositive motion has been filed by the City of Knoxville. As a result, it is simply not the case that every claim over which the Court has independent jurisdiction will be dismissed upon the entry of summary judgment in favor of Officers Ascencio and Mullane. The Court's primary justification for dismissing Plaintiff's state law claims without prejudice is therefore unavailable:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,

18

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

*(3) the district court has dismissed all claims over which it has original jurisdiction,* or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (emphasis added); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.") (citations omitted).

As to the merits, Defendants failed to provide any authority supporting their contention that the undisputed facts do not support any of Plaintiff's state law claims. This is important, as it is incumbent upon Defendants–not this Court–to develop their arguments.

Because federal law claims remain and Defendants rely upon a bald assertion rather than a developed argument, the Court declines to dismiss on either jurisdictional or merits-based grounds. Instead, the Court will reserve resolution of the state law claims, and order City of Knoxville to immediately advise the Court what effect its dismissal of the federal claims against Officers Ascencio and Mullane has upon the claims against the city.

## VI. CONCLUSION

Accordingly, for the reasons state herein,

**IT IS ORDERED** as follows:

1. Defendants' Motion for Summary Judgment (Doc. # 38) is **GRANTED IN PART** and **DENIED IN PART**;

2. Plaintiff's federal claims against Defendants Joel Ascencio and Brian Mullane are hereby **DISMISSED WITH PREJUDICE**;

3. The Court reserves resolution of the state law claims against Defendants Joel Ascencio and Brian Mullane;

4. Defendant City of Knoxville shall file a memorandum **within fourteen (14) days of the date of entry of this Order.** This memorandum should advise the Court what effect its dismissal of the federal claims herein has upon the claims against the city. Any response by either Plaintiff Carlton Smith or Defendants Joel Ascencio and Brian Mullane would be due fourteen (14) days thereafter.

This 19th day of August, 2013.

Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\Opinions\Knoxville\11-419 MOO.wpd